**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **CIVIL ACTION** |
| ) | |
| v. ) | No.  04-1223-MLB |
| ) | |
| SECRETARY OF THE STATE OF KANSAS ) | |
| and WILLIAM EARL PACKARD, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on the government's motion for summary judgment. (Doc. 9.)  The motion has been fully briefed and is ripe for decision. (Docs. 10, 11, 12, 14, 18, 20.)  For reasons herein, the government's motion is granted in part and denied in part.

**I. Facts[1]**

Defendant William Earl Packard is currently confined at the Forrest City Federal Correctional Institution in Arkansas. During his criminal prosecution, the government was represented by Special Assistant U.S. Attorney (SAUSA) Jacqueline Rocusek. Judge Murguia presided for the United States District Court of Kansas. Packard pleaded guilty on June 5, 2000, to charges of attempt to manufacture Methamphetamine, conspiring to manufacture Methamphetamine and possession of a chemical with the intent to manufacture Methamphetamine.

On or about April 24, 2002, Packard served lien documents on

---

[1] The Secretary of the State of Kansas has been terminated as a party to this case pursuant to an agreed Journal Entry of Judgment. (Doc. 8.)

SAUSA Rocusek, claiming a right to payment in the amount of $750,000 for "the willful and unlawful (FRAUD) violations of Oath of Office (BREACH OF CONTRACT), failing to protect the unalienable 'Birth Rights,' multiple violations of TITLE 5, TITLE 18, TITLE 28 of the UNITED STATES CODE, and for initiating criminal/civil actions against the Supreme Sovereign, William Earl Packard while being employed by a Bankrupt entity and False Imprisonment of a Private American Citizen."  (Doc. 10, exh. 2 at 5.)  On or about May 20, 2002, Packard served an "Affidavit of Sovereignty" demanding payment from SAUSA Rocusek in the amount of 4.7 billion dollars for her violation of the Oath of Office.  Similar documents were served on AUSA Emily Metzger on August 15, 2003 and October 16, 2003.  (Doc. 10, exh. 5.)

On January 13, 2003, Packard filed a Uniform Commercial Code (UCC) lien against Judge Murguia for 15 million dollars.  On the same day, Packard filed a lien in the amount of $750,000 against SAUSA Rocusek.  The government filed a complaint for declaratory and injunctive relief on behalf of Judge Murguia.  Judge Marten granted relief to the government on October 30, 2003.

> The [lien] statement is without validity in law or fact.  Judge Carlos Murguia did not know and had never met or talked to Packard prior to Packard's plea of guilty. Judge Murguia is not presently and has never been indebted to Packard in any manner. He has never granted Packard or anyone on Packard's behalf a security interest or lien in any real or personal property owned by or in the possession of Judge Murguia. His sole dealings with Packard consist of Packard's plea of guilty before him on June 5, 2000, and his subsequent sentencing of Packard. He does not know Packard in any capacity other than in his official capacity as United District Court Judge for the District of Kansas.
>
> * * *
>
> The uncontroverted facts support the relief sought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202,

-2-

> which gives the court the ability to declare the rights and other legal relations of interested parties, and may grant further necessary or proper relief based on its declarations. Here, the facts compel the conclusion that the illegal lien filed by Packard is null, void, and of no legal effect. Packard had no factual or legal basis to file such lien. The United States is entitled to a declaratory judgment voiding, nullifying and dissolving the illegal lien intended to obstruct the execution of the laws of the United States of America.

United States v. Packard (Packard I), No. 03-1170, Doc. 16 at 3-4.

On November 10, 2003, eleven days after Judge Marten issued his ruling, Packard filed a lien in the amount of 20 million dollars against AUSA Metzger.  At no time has either SAUSA Rocusek or AUSA Metzger been indebted to Packard.  Moreover, SAUSA Rocusek and AUSA Metzger have only been in contact with Packard in their official capacities.

The government filed a motion for summary judgment, seeking declaratory and injunctive relief, in addition to damages under the False Claims Act.  After initial review, the court asked the parties to supplement their filings to address the definition of claim under the False Claims Act and inform the court as to the applicability of Rule 11 and/or 28 U.S.C. § 1927.  (Doc. 13.)  After reviewing the supplemental briefings, the court ordered Packard to show cause as to why he should not be sanctioned for making a false statement to the court.  (Doc. 19.)  For the reasons herein, the court sanctions Packard to pay $10,000 to the court for his violation of Fed. R. Civ. P. 11(b)(2).

## II.   SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

## III. ANALYSIS

### A. False Claims Act

The False Claims Act provides:

> Any person who knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval . . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).

The government asserts that the lien documents served on both Rocusek and Metzger are false claims and, therefore, Packard is liable under the Act. The statute defines a claim as "any request or demand,

-4-

whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c). The government asserts that Packard's liens satisfy this definition since "the United States could have paid Packard's demand for payment to avoid the threatened action against its employees, i.e. the filing of the liens." (Doc. 14 at 4.)

The Third Circuit examined the history and purpose of the act in construing the definition of claim:

> The False Claims Act was originally adopted following a series of sensational congressional investigations into the sale of provisions and munitions to the War Department. Testimony before Congress painted a sordid picture of how the United States had been billed for nonexistent or worthless goods, charged exorbitant prices for goods delivered, and generally robbed in purchasing the necessities of war. Congress wanted to stop this plundering of the public treasury. At the same time it is equally clear that the False Claims Act was not designed to reach every kind of fraud practiced on the Government.
>
> * * *
>
> The False Claims Act seeks to redress fraudulent activity which attempts to or actually causes economic loss to the United States government. As the Supreme Court held in Hess, the purpose of the False Claims Act was to provide for restitution to the government of money taken from it by fraud. It was not intended to impose liability for every false statement made to the government.
>
> > FN5. Extending the False Claims Act to reach any false statement made to the government, regardless of any impact on the United States Treasury, would appear to impermissibly expand standing doctrine and essentially permit any plaintiff to sue on behalf of the government when false or misleading statements are made to any government agent including the courts, the

> legislature or any law enforcement officer.
>
> For these reasons, we hold the submission of false claims to the United States government for approval which do not or would not cause financial loss to the government are not within the purview of the False Claims Act. Unless these claims would result in economic loss to the United States government, liability under the False Claims Act does not attach.

Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176, 183-184 (3d Cir. 2001).

The Eighth Circuit has also held that "only those actions by the claimant which have the purpose and effect of causing the United States to pay out money it is not obligated to pay, or those actions which intentionally deprive the United States of money it is lawfully due, are properly considered 'claims' within the meaning of the FCA." Costner v. URS Consultants, Inc., 153 F.3d 667, 677 (8th Cir. 1998). To find otherwise would extend the Act to allow recovery for false "statements" instead of false "claims." And it is clear that Congress did not intend for all false statements made to the federal government qualify as claims within the meaning of the Act. Hutchins, 253 F.3d at 183.

Since the government has failed to establish that Packard's claim would have caused the United States to pay out money it was not obligated to pay, its motion for summary judgment on the claims pertaining to the False Claims Act is denied.

**B.   Declaratory and Injunctive Relief**

The government seeks an order permanently enjoining Packard from filing or serving any lien documents against any current or past employee of the federal government without prior approval of this court. Packard consents to this order. Moreover, regardless of

Packard's consent, this court would have granted an injunction on the merits for essentially the same reasoning Judge Marten opined in Packard 1. No. 03-1170, Doc. 16 at 3-4.

The uncontroverted facts also support relief sought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. Again, for essentially the same reasoning in Packard I, the liens filed against Rocusek and Metzger are null, void, and of no legal effect. Packard has no involvement with Rocusek and Metzger outside of judicial proceedings. Neither Rocusek nor Metzger are indebted to Packard. As in Packard I, the government is entitled to a declaratory judgment voiding, nullifying, and dissolving the illegal liens.

**C.   Rule 11(b) Sanctions**

Fed. R. Civ. P. 11(b)(2) provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

Packard's response to the government's complaint presented that the liens he filed were "valid (not bogus) liens." (Doc. 6.) The government asserts that Packard knew, at the time of Judge Marten's ruling, that the liens were invalid. Packard, in responding to this court's show cause order, asserted that the previous lien was void since the title 'Judge' was used in the filing and, therefore, since the liens filed against Metzger and Rocusek do not contain this title, Packard had a good faith belief that the liens were valid. (Doc. 20

-7-

at 1-2.)

Judge Marten did not declare the lien null, void, and of no legal effect because of Judge Murguia's title. Rather, the lien was declared to be invalid after the court concluded:

> Judge Carlos Murguia did not know and had never met or talked to Packard prior to Packard's plea of guilty. Judge Murguia is not presently and has never been indebted to Packard in any manner. He has never granted Packard or anyone on Packard's behalf a security interest or lien in any real or personal property owned by or in the possession of Judge Murguia. His sole dealings with Packard consist of Packard's plea of guilty before him on June 5, 2000, and his subsequent sentencing of Packard. He does not know Packard in any capacity other than in his official capacity as United District Court Judge for the District of Kansas.

Packard I, No. 03-1170, Doc. 16 at 3. Similar to Judge Murguia, Metzger and Rocusek did not know Packard prior to interaction with him in their official capacity and they have never been indebted to Packard.

The liens filed against Metzger and Rocusek are virtually identical to the lien documents filed against Judge Murguia. See Doc. 10, exhs. 2, 3, 5. Packard has not asserted any legal grounds that grant him a right to file these liens.

The court finds that Packard either knew or should have known that his response contained a false contention. The court accordingly sanctions Packard $10,000 for his violation of Fed. R. Civ. P. 11(b)(2).

### D.  Conclusion[2]

Plaintiff's motion for declaratory and injunctive relief is

---

[2] The court had requested that the parties supplement the briefings to address the applicability of 28 U.S.C. § 1927. However, after review of the relevant authority, the court finds that costs and attorney fees are not warranted under 28 U.S.C. § 1927.

granted.  The referenced liens are null, void and of no legal effect. Defendant Packard, along with his agents, employees and any others in active concert or participation with him, is hereby permanently enjoined from filing or recording, or attempting to file or record, any document or instrument of any description which purports to create a "lien" or record of any kind against the person or property of any current or past federal employee without the prior permission of this court; defendant Packard is permanently enjoined from taking any steps to retaliate or to harass former SAUSA Rocusek and AUSA Metzger in any manner whatsoever, including but not limited to physical and financial means.

Plaintiff's motion for summary judgment under the False Claims Act is denied.  Defendant Packard is sanctioned $10,000, payable immediately to the Clerk of Court.  Defendant Packard is ordered to immediately pay costs to the United States in an amount of $378.50 in accordance with 28 § 2412(a)(2).

IT IS SO ORDERED.

Dated this 6th day of June 2005, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE